Good morning, Council. Good morning, Your Honours. My name is Lindsay Levitt, and I am representing the appellant for OMNI Hotels. And may it please the Court, I'd like to reserve two minutes for rebuttal, please. All right. My oldest daughter is in junior high, and she studied World War I this year. And one of the unique things about World War I is this concept of trench warfare. And she learned about this territory of land between the opposing army's front lines. And that opposing, that land that no one has claim over is called no-man's land. We've heard that expression before. The litigation equivalent of no-man's land is after discovery closes and before trial starts. And in Arizona, at least, and I don't know how it is in every jurisdiction, but in Arizona, that no-man's land period after discovery before trial can be six months, nine months, a year, or even longer. And so this appeal talks about what happens when new facts and material facts arise during this no-man's land period after discovery and before trial. Counselor, doesn't, thinking about Arizona state procedure, doesn't Arizona have the ability to deal with no-man's land, to impose obligations or address that through court rules or through civil procedure? Why does no-man's land get to form the basis for the claim in this case? Sure. Well, I don't think no-man's land forms the basis, but no-man's land is a reality of what happened. The facts that arose in this case couldn't have been discovered during discovery because they didn't arise until after discovery. But you're right, Your Honor. They could have been discovered at trial, fair to say. They could have been discovered at trial, but how would they have been discovered at trial? Through question and answer? Through examination? Correct. Correct. I mean, in this case, Ms. Tarrin testified about her physical activity. So this was not a topic. It was not before the court in terms of examination. It was opened wide by the testimony and there was free rein to cross-examine on those topics. So why doesn't that address the issue? Well, in Arizona, under Arizona common law, these claims fraud on the court is when, if Ms. Tarrin obtained a judgment by concealing a material fact and suppressing the truth with the intent to mislead the court, and you're right, she did testify about the purported physical limitations that her injury from two years prior supposedly was still causing her and that she feared would continue to cause her. But that's the exact concealment and suppression of fact and non-disclosure that gives rise to our claim for fraud. Was she asked during cross-examination and somehow didn't respond? Because I see this more as a failure to volunteer additional information rather than you said a concealment of information. The whole thing is kind of odd because you're here on a fraud on the court claim and you had a trial in state court and there are procedural mechanisms for kind of attacking what happened there, but now you're here in federal court. I just find that that very odd. And so now we're looking back and you're asking us essentially to render a ruling that overturns a verdict obtained in Arizona state court. I'm not asking this court to overturn that verdict. I'm asking this court to find that it's a question of fact that should be submitted to another jury as to whether Ms. Tarrin committed a fraud on the court. And under Arizona law rule 60, yes, we were permitted to bring an action or file a motion to reopen the case based on this information. But under Arizona common law, which has been around for more than 100 years, this specific claim, and which isn't restricted by rule 60, we're permitted to bring this claim in an independent action in a different court. And that's what we chose. No, I get it. It's odd. I don't recall ever seeing a situation like this where it's not challenged directly before the trial court. You don't get a lot of poll dancing, fraud on the court cases here in the 9th Circuit? Well, I mean, we don't get the unusual. It is unusual, but it's permitted under Arizona common law to bring an independent action. And there's diversity jurisdiction. And that brings me into the point of getting back to Judge Huey's question regarding cross-examination. Was cross-examination limited or curtailed in any way? No, it was not. But the cross-examination was uninformed because the evidence, this new facts that arose during no man's land weren't known. And we've all been and done trials before. You can't cross-examine someone about something that you have no idea exists and would have no reason to question them about. Well, counsel, there was testimony, though. And I think you phrased it a moment ago in terms of testimony about limitations. But there was also testimony about activities, activities including, I think it was yoga and bicycling and weightlifting in very vigorous physical activities. It seems to me it did open the door to that subject matter. And maybe the good conventional wisdom is don't ask a question you don't know the answer to on cross. But nonetheless, that subject matter was before the court. Now, a few minutes ago, you made a lighthearted remark about pole dancing. And I have some concern. In this case, your client is pursuing the plaintiff through the appellate process in Arizona, through this new lawsuit, through this appeal. And I don't know that pole dancing is really different from the other types of activities that you testified about, except that it carries a certain stigma to it in the eyes of some, at least. And so the fact that that pole dancing is really the centerpiece of your case, it just it raises a concern that this dogged pursuit of Ms. Tarrin in this case is, well, it's exposing her to ridicule, candidly. No, and you're right. I should have rephrased it. It's not pole dancing. This is pole fitness. It's a type of exercise. Now, what's important, though, is that this court is focusing on what my client, Omni, could have or should have done better at the trial. And that's what the district court did. And because the district court, in a summary judgment motion, focused on Monday morning quarterbacking, what my client could have done better. That's why we're here and had to file that appeal. And here's why. It's because Arizona common law, which should have been applied to this case, specifically holds that the diligence or lack of diligence of the non-concealing party is not a factor when determining whether fraud in the court has been has occurred. But to answer the question of concealment, we have to ask, did you ask her? I don't think we do, because otherwise you're saying the court, the court may be suggesting that it has to be perjury in order to commit fraud in the court. And we're not saying that we asked her and she lied. We're saying she got on the stand and said two years later, I can't play the violin. I can't hold the steering wheel. I can't put weight on my left hand. I can't play with my bunny. I don't I don't think she. No, I didn't. She said it. That's kind of important, I think, because I suppose if, you know, she said I'm a paraplegic. Now and and then it comes out that she's doing this pole fitness. I think all of us probably wow, that those two things seem inconsistent. And I think I probably would have thought pole fitness was inconsistent with having a hand hand injury. But there is evidence here that apparently you can do it without an arm. And so I'm trying to figure out where are you. You think she had a duty to disclose this without you asking her about it because you you think that pole fitness is inconsistent with the injury she claimed? Is that why? Under Arizona law, there is an ongoing duty to disclose and supplement the record. So, yes. But what we're saying is her. Well, the reason the reason I frame it the way I did is is I'm trying to figure out what other what other things that you would think she had to supplement like that. If you hadn't asked her about weightlifting, which she have to have told you she was still weightlifting. If we had asked her, we would have expected her to testify. No, no, no. I'm saying if you hadn't asked her, because that's the circumstances we have here, what it because that I think we're all familiar with the idea that the fact that somebody's weightlifting doesn't mean they didn't have a pinky injury or have ongoing effects on the pinky injury. So I'm trying to figure out why you think this is. Other than just a general idea, I suppose that we probably all think, which is that pole fitness can't be done with a hand injury, but apparently it can just like some weight fit weightlifting can be. But would you think that she had to disclose the weightlifting if you didn't ask her about it? Her responsibility was to tell the jury the truth about what got the impact of her injury in her life. The jury should have been entitled to hear about the inconsistent and frankly, completely incongruous testimony of her pole fitness. So that's your position, though, that it's so inconsistent. I think I think you're saying, yeah, you can't your positions. So do we have to determine that it is inconsistent or do we just have to think under your view that a jury could determine that it was inconsistent? The latter. Well, then I think that goes to my weightlifting. Then if she hadn't disclosed the weightlifting, because in theory, a jury could determine, yeah, I guess, you know, it seemed like weightlifting, you know, it's a jury might think that I just try to figure out where your standard. It really mean that a lot of stuff would be open to this kind of claim. Well, the tricky thing about Arizona common law is that it provides a handful of somewhat of concepts of what fraud on the court means, concealing material fact, suppressing the truth with the intent to mislead the court. And so it's a question of fact, did her talking about her bunny and and that she may need or hypothesize that she may need surgery one day on her finger. Did that conceal a material fact that barred a real contest before the court when my client didn't know, didn't have any reason to know that she was an advanced level in pole fitness at the time of at the time of trial? All right. You're actually over time, but I know you wanted to save some. So I'll give you a minute back. Thank you, Your Honor. Good morning, Your Honor. Please, the court. My name is Jeffrey Victor. I represent a question that's that's it's sort of a side issue, but kind of maybe because you heard us wondering, like, why is this case in federal court as opposed to is is it possible? It's I don't understand Arizona law. So if there had been a motion to reopen or something for fraud on the court in the Arizona action that that's permissible, if that had happened, did that happen in this case? No, that's what's happened. Would you have gotten in a loss? Would you have been able to tack that on to your attorney's fees? Is that and then maybe they think they won't get attorney's fees in federal court? Is that possibly the reason why they did this or as opposed to just bring it in state court? They filed a motion for a new trial. They filed a motion for remitter. OK, and those were denied by Judge Cone in the Superior Court in Pima County, Arizona. So they went off and then they filed an appeal to the Court of Appeals Division two. So they had their day in court a second time that that didn't go. And they filed a motion to to stay the appeal because they supposedly discovered this posting on the Internet that went nowhere. They didn't get any relief. Then they switched gears and they think, well, maybe it'll be more favorable to just try a different venue, maybe because exactly exactly. Is there an attorney's fees aspect to this? There should be. There should be. There should be. I requested attorney's fees from the district court. The court did not rule on him. And I'm attorney's fees today. This this is the fourth. This is the fourth venue, for lack of a better word, that this case has been to. It's been to Superior Court, the trial court. It's been to the Court of Appeals in the state and the State Court of Appeals. It's been to the U.S. District Court. And now we find ourselves in in the Ninth Circuit Court. So if I may, Your Honor, I'll just touch on some points. I was curious as to why. No, no, those are good questions. Those are excellent questions. So Mr. Leavitt was not the trial attorney in this case. OK, he is the fourth attorney on this case. I've had the trial lawyer in this case, the trial lawyer in this case. The original trial lawyer was a gentleman by the name of Jefferson Collins. He tried the case. He then did an appeal to the Arizona Court of Appeals. Were you Ms. Perrin's trial lawyer? Yes, from day one, from day one all the way till now. So I take it that I didn't reveal the review, the entire trial transcript. I take it that on direct examination, then she testified about her limitations and also testified about her physical activity level, the weightlifting, etc. All that came out on direct, but just not this pole fitness activity. Well, the pole fitness classes were fairly recent prior to the actual trial. I believe the trial was in April of 2020. No, I recognize that. I'm just trying to envision like how this played out. She was on direct examination. You examined her regarding her level of activity, both the limitations as well as what she's able to do. And in the course of that narrative, she wasn't specifically asked about the pole fitness. And so that just never came out. I wasn't aware of it and she didn't bring it up. She answered whatever questions were asked of her. You didn't know about it either? No, Your Honor. She answered whatever questions were asked of her short and to the point. And as is typically done, just answer the question. As for a trial witness, just answer the question. Interesting enough, the appellant in its brief says that she perjured herself. She lied. I have a case that's going to trial next month where the opponent, the witness was asked, have you ever been involved as a party to a litigation? He said, no. I asked him, have you ever testified in any types of hearings or trials, board hearings? He said, no. Most recently, I did a quick search and I found he had been involved in two prior cases where he was a party and he had testified at a hearing, a court hearing, in one of those cases. That's a direct misstatement in response to my questions. That's a lie. But for Mr. Levitt to impugn her character and integrity and say that she lied and she perjured herself, I respectfully, I would ask the court to ask him, show me where she lied in response to a question that trial counsel asked. No, she didn't lie. So then we get to the only question on the table, is this alleged non-disclosure. Is this alleged non-disclosure enough for one to say it's a fraud upon the court? Well, no. There's case law out that says a non-disclosure in of itself is not enough for a theory of fraud upon the court. And the reason being is because the cases rely on the cross-examination of the opposing counsel at trial to come up with and find the non-disclosure. I mean, all they had to do is spend five minutes prior to the trial, which they did, but they didn't do it until afterwards. Now, in all candor with the court, Mr. Levitt told Judge Collins in the oral argument, he told Judge Collins that the omni did not discover and had no reason to discover. And he said it wasn't out there. He said she didn't post it until after the trial verdict. That's not true. And I called him on it afterwards. And I think it's number 48, excuse me, yeah, number 48, where he corrected himself because he represented to the judge in oral argument, Mr. Court, that this was not out there. It was not discoverable. It was not out there until after the jury came back in April of 22. That's not true. So I called him out on it. And then he filed a document. Yeah, you're right. I'll let the court know. It was out there in February of 2022, two months before the trial. But in the papers before the court, he's saying the same thing. He's arguing again that she didn't post this, that it was not discoverable. It wasn't out there on the internet until after the trial. That's not correct. That's disingenuous to say the least. I'm going to date myself here. I've been doing this for over 40 years, both as a prosecutor and as a public defender and now in private practice for many years. The parties live or die or parties sink or swim based on the questions they ask and the questions they do not ask. The parties sink or swim based on preparation and based on diligence. That did not happen here. This comes down to the lazy litigant issue and the fact that they want to do over because they were a lazy litigant. And it wasn't just a lazy litigant in Superior Court. There was no IME. There was a stipulation to the medical records coming in at trial that said an impairment rating of 1 to 19 percent. And then in federal court, they raised the issue of fraud upon the court. OK, go send her to an orthopedist, to a hand specialist to see what she can and cannot do. They didn't do that. OK, go get a Paul fitness instructor or expert to come and testify that it's very demanding. And yes, you have to have full range and full use of your pinky finger in order to engage in these different levels. They didn't do that. In fact, what they tried to do is they tried to turn the dance studio owner, Katrina Wyckoff, into their expert. They tried to get her to say what they're arguing. And she said, no. She said, we accommodate everybody. We accommodate people that are wheelchair bound. We accommodate somebody that doesn't have an arm. And when I was in nationals in competition, I had a rotator cuff tear. You don't need to use and extend your pinky finger to do these exercises. So again, you have this lazy litigant defense. You don't have any experts. You don't have any independent medical examinations. You don't have any witnesses to say anything contrary. Now, he wants us to think that, well, you know, if somebody starts something two months earlier, they got to raise it at trial. OK, no. What he wants is he wants to open the floodgates. And I'll sit down in a minute. He wants to open the floodgates and he wants you to agree with him. And that would open the floodgates for any party that lost the case because they didn't prepare it well. They didn't ask the right questions. That would open the floodgates to, oh, I find something. I think I can argue this and get a whole new trial. No, it's not proper. And this court should award reasonable attorney's fees and costs for us having to come here. If unless anybody has any other questions. Thank you. Thank you for your time. Thank you. I'll be quick. McNeil v. Hoskins, that's a 2014 Arizona Court of Appeals case. Unfortunately, most of these Arizona common law fraud in the court cases arise in a family law context where one spouse is concealing assets from another spouse and the judge makes a decision about alimony or child support based on the assets that are in front of them that they're aware of. In that McNeil v. Hoskins case, the wife did not disclose that her husband had already paid her $85,000 in alimony and the court wasn't aware of that. The husband didn't even know that he had done that because the amounts were just being auto paid. And the wife tried to argue that the husband could have discovered the overpayments and called them to the court's attention at the dissolution trial. And the Arizona court said, although the husband's diligence or lack of it would be relevant to a claim of common law fraud, no such defense applies to a claim of fraud on the court. And all I'm hearing is a spotlight from my friend, is a spotlight on what my client should have done to better trial. And that is not the focus under Arizona law, what a fraud on the court cases. Thank you. Thank you very much, counsel, for both sides for your argument this morning. The matter is submitted and that concludes our argument calendar for the week. Court is adjourned.
judges: NGUYEN, VANDYKE, Huie